UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| LOKESHWARAN NARAYANASAMY; SAVITRY KRISHNAMURTHY, Individually and as Parent, Natural Guardian, and Next Best Friend of SMITA LOKESHWARAN, Plaintiffs, v. CLAUDETTE ISSA; BALISE T, LLC; RASIER, LLC; UBER TECHNOLOGIES, INC.; JOHN DOE; and JANE DOE, Defendants. | C.A. No. 1:17-cv-603-JJM-LDA |

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., Chief Judge, United States District Court.

Needing a ride from T.F. Green Airport to his hotel, Mr. Lokeshwaran Narayanasamy used the Uber Application on his cell phone to summon a driver. Defendant Claudette Issa, a registered Uber driver, responded and picked him up. During the trip, Ms. Issa's car collided with a vehicle owned by Balise T, LLC ("Balise") abandoned by the roadside after breaking down. Both Mr. Narayanasamy and Ms. Issa suffered injuries.

The Narayanasamy's filed an eight-count complaint against Ms. Issa; Balise; Rasier, LLC and Uber Technologies, Inc. (collectively "Uber"); John Doe; and Jane Doe. ECF No. 1. Claiming Ms. Issa was negligent, Mr. Narayanasamy, along with his wife Savitry Krishnamurthy and their minor child (collectively "the

Narayanasamy's"), seeks compensation from Uber under a theory of respondeat superior. They also sued Balise for negligence. Ms. Issa has brought crossclaims for personal injury and indemnification against Balise, John Doe, and Jane Doe. ECF No. 22. Balise filed crossclaims against Ms. Issa and Uber for contribution and indemnification, alleging negligence, negligent hiring, training, and supervision. ECF No. 14. Uber brought crossclaims against Defendants Balise, John Doe, and Jane Doe. ECF Nos. 17, 19.

Uber moves for summary judgment,[1] claiming that Ms. Issa is not an agent, servant, or employee of Uber as a matter of law, and thus it cannot be held liable under any respondeat superior theory. ECF No. 68. Balise and the Narayanasamy's oppose the motion, arguing that summary judgment is inappropriate because enough questions of fact exist. ECF No. 71, 79. Uber filed a reply. ECF No. 81.

*Standard of Review*

When making a summary judgment determination, the Court should review the entire record and consider the facts and inferences in the light most favorable to the non-moving party. *Continental Cas. Co. v. Canadian Univ. Ins. Co.*, 924 F.2d 370, 373 (1st Cir. 1991). Summary judgment is warranted when "the pleadings [and discovery], together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

---

[1] Uber also moves to strike and/or objects to various evidence cited in Balise's Statement of Undisputed Facts. ECF No. 83. The Court has determined that there is enough relevant evidence in dispute at this stage to send the matter to the jury so that motion is DENIED because most if not all the issues Uber raises are best dealt with at the time of trial when the Court will deal with evidentiary issues.

of law." Fed. R. Civ. P. 56(c). A genuine dispute of material fact is an issue that "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

*Analysis*

The question here is whether Ms. Issa is an Uber employee rendering Uber liable for the injuries resulting from the car accident. In its motion, Uber argues that it cannot be held liable as a matter of law for Ms. Issa's negligence because she is an independent contractor not an Uber employee. Mr. Narayanasamy counters that the Court should look into the reality of the relationship between Ms. Issa and Uber— one that he believes bears many hallmarks of an employer-employee relationship— and should deny summary judgment because there is a dispute over that relationship.

The parties do not appear to dispute, however, that whether a relationship between parties constitutes an employer-employee relationship is a mixed question of fact and law and "depends in each case upon its particular facts taken as a whole." *DiOrio v. R. L. Platter, Inc.*, 211 A.2d 642, 644 (R.I. 1965).[2] There can be no fixed rule in these cases because "'no single phase of the evidence is determinative.'" *Id.* (quoting *Sormanti v. Marsor Jewelry Co.*, 118 A.2d 339, 340 (R.I. 1955)). Therefore, a person's status in the work world—whether an employee or an independent

---

[2] Nowhere in its Memorandum (ECF No. 68-11) or Reply (ECF No. 81) does Uber challenge Balise's procedural assertion that whether an entity is liable under a theory of respondeat superior is a mixed question and should go to the jury in the first instance if there are disputed facts or disputes on how the facts should apply to the law.

contractor—should be decided by a jury when enough facts could support either finding.

Other courts have held that the mixed fact-law question of whether Uber drivers are Uber employees belongs to the jury. Judge Edward M. Chen of the Northern District of California denied Uber's summary judgment motion, finding based on the facts in the case and reflecting on the United States Supreme Court's recent decision in *Hana Financial, Inc. v. Hana Bank*, —U.S.—, 135 S.Ct. 907, 190 L.Ed.2d 800 (2015), that a jury should decide whether Uber drivers were considered employees or independent contractors. *O'Connor v. Uber Tech., Inc.*, 82 F. Supp. 3d 1133 (N.D. Cal. 2015); *See Hana Fin.*, 135 S.Ct. at 912 (unless the facts are so clear that only one inference may be drawn, mixed questions of law and fact are for the jury).

The court recognized that a "'jury's constitutional responsibility is not merely to determine the facts, but to apply the law to those facts and draw the ultimate conclusion.'" *O'Connor*, 82 F. Supp. 3d at 1147 (quoting *United States v. Gaudin*, 515 U.S. 506, 512 (1995)). It observed that

> juries answer often-dispositive factual questions or make dispositive applications of legal standards to facts. The fact that another jury, hearing the same case, might reach a different conclusion may make the system 'unpredictable,' but it has never stopped us from employing juries in these analogous contexts."

*O'Connor*, 82 F. Supp. 3d at 1148 (quoting *Hana Fin.*, 135 S. Ct. at 912) ("juries should typically decide mixed questions of law and fact . . . [and] a hiree's status as either an employee or independent contractor should typically be determined by a

jury, and not the judge."). Resolving this dispute will turn on the facts determined by the jury and the jury's application of the facts to the law as given to it by the Court. To the extent there is a concern that a jury "may improperly apply the relevant legal standard, the solution is to craft careful jury instructions that make that standard clear." *Id.* at 1148 (quoting *Hana Fin.*, 135 S. Ct. at 912). At the motion for summary judgment stage, the Court's only determination is whether Balise and the Narayanasamy's have set forth enough evidence that if believed, a jury could determine that the driver, Ms. Issa was an employee of Uber.[3]

Next, the Court looks at how state law views the parameters of the employer-employee relationship to see if more than one inference could be drawn such that the question should go to the jury. Under Rhode Island law, the test to determine whether a person is an employee or an independent contractor is "'based on the employer's right or power to exercise control over the method and means of performing the work and not merely the exercise of actual control.'" *Cayer v. Cox*

---

[3] The First Circuit has not yet dealt with whether Uber drivers are employees. Other courts have and there is some disagreement among them. *See, e.g., Search v. Uber Tech., Inc.*, 128 F. Supp. 3d 222 (D.D.C. 2015), *Doe v. Uber Tech., Inc.*, 184 F. Supp. 3d 774 (N.D. Cal. 2016) (passenger sufficiently alleged that Uber driver is an employee) *but see McGillis v. Dep't of Econ. Opportunity*, 210 So. 3d 220 (Fla. Dist. Ct. App. 2017) (Uber driver is not an employee for purposes of reemployment assistance). Recently, the New Jersey Department of Labor and Workforce Development sent Uber a $650 million bill for misclassifying its drivers as independent contractors, instead of employees. Jack Kelly, *New Jersey Hit Uber with a $650 Million Tax Bill for Mischaracterizing Workers: Is This the Start of a War Against Gig-Economy Companies?*, FORBES, Nov. 15, 2019, https://www.forbes.com/sites/jackkelly/2019/11/15/new-jersey-hit-uber-with-a-650-million-tax-bill-for-misclassifying-workers-is-this-the-start-of-a-war-against-gig-economy-companies/#229c5e34646e.

*Rhode Island Telecom, LLC,* 85 A.3d 1140, 1144 (R.I. 2014) (quoting *Absi v. State Dep't of Admin.,* 785 A.2d 554, 556 (R.I. 2001) (citation omitted)). Considering this legal framework, the Court now moves to the parties' views of the disputed and undisputed facts of this case.

Uber asserts that the evidence shows that it is merely a software provider with no actual or apparent control or authority over drivers like Ms. Issa. As evidence that Ms. Issa is not an employee, Uber cites to the Technology Services Agreement (TSA) executed between Ms. Issa and Rasier, which states she is an independent contractor. Uber also points to the General Assembly's determination that Uber drivers are independent contractors. R.I. Gen. Laws § 39-14.2-16 ("TNC drivers shall be independent contractors and not employees of the TNC if they are determined to meet federal and state law and regulation relating to independent contractors, including, but not limited to, 26 U.S.C. § 3401(a), 26 U.S.C. § 3402(a)(1), §§ 28-29-17.1 and 28-42-7, and the TNC and TNC driver agree in writing that the TNC driver is an independent contractor of the TNC."). Finally, Uber relies on Ms. Issa's deposition testimony where she agrees that she is an independent contractor.

In addition to the TNC statute and the TSA that all drivers sign, Uber points to the fact that the driver controls the method and means of how they provide their services to riders, whether they chose to work or not work on any given day or any given time, whether to accept rides, what route to take, how to drive their car, whether also to work for a competitor (such as Lyft), and drivers provide their own equipment. Also, Uber does not pay the driver, the riders do.

On the other side of the road, Balise and Mr. Narayanasamy assert that Uber is a service provider and employer of driver/partners. Their view of the evidence is that Uber "controls" their drivers, so it assumes liability for their actions. *See generally*, ECF No. 71 at 14–15, 27–28. For example, they argue that:[4]

1. *Uber controls the finances*: Uber unilaterally sets and controls fares; Uber pays its drivers and can alter payment if the driver receives a complaint; a rider's terms and financial relationship is with Uber directly not the driver; Uber collects the fares through a rider's credit card and the drivers have no option to collect fares directly from riders; fares set by Uber vary based on demand and peak times; Uber solely decides when and if prices surge to higher levels.

2. *Uber controls the branding and marketing*: Uber provides drivers with Uber logos for their vehicles; drivers are prohibited from having business cards or soliciting rides outside the Uber App; Uber sends riders using the Uber App a message that they can rely on Uber to provide "safe, reliable" rides, and that Uber has "peace of mind designed into every ride;" Uber expressly assures its riders that it actively screens drivers, and acts on ratings so that the riders may have "peace of mind."

3. *Uber imposes requirements on the drivers*: Uber has guidelines for quality, cleanliness, and behavior standards; Uber exercises substantial regulation

---

[4] Because the only question for this Court at this stage is whether there are disputed facts supporting the contention that Ms. Issa was an employee of Uber, the Court turns its primary focus to whether the evidence Mr. Narayanasamy presents is disputed and whether other inferences could be drawn.

and control over driver performance by reserving the right "at any time in Company's sole discretion to deactivate or otherwise restrict" access to the Uber App; Uber has threatened drivers with "deactivation" for issues such as having a poor attitude or not taking the most efficient/direct route on a trip, a rider complaining about a bad smelling car, trying to settle disputes directly with riders, asking riders to be paid for damage done to the driver's vehicle, low customer ratings, cancelling too many rides, or for failing to accept enough rides while "on-duty."

4. *Uber handles disputes and adjudications*: Uber handles and adjudicates any rider disputes; in resolving disputes, Uber may reduce a rider's fare in its sole discretion and thereby, a driver's income.

5. *Relationship directly between Uber and the rider*: Uber maintains an ongoing relationship with riders through in-App advertisements and solicitations; Uber often offers riders reduced fares, special fare packages, free hotel stays, and other promotions, such as "Uber cash" that are credits that can be used to pay for rides, scooters, or bicycles, or food delivery through Uber's "UberEats" App; Uber periodically runs contest giveaways for riders including concert tickets and vacations as a marketing strategy; riders may also join special membership levels such as "Uber Gold" and "Uber VIP" to enjoy special privileges; Uber offers a "24/7" support team to address any rider concerns.

6. *Uber provides benefits to drivers*: Uber offers paid liability and comprehensive collision insurance, and rights to participate in health insurance offerings for which Uber has negotiated group rates; for applicants who do not have

their own car, Uber offers "the Uber rental car program" so that drivers can get a ready-to-go car at a low commitment; if a driver does not have their own smartphone, Uber will provide one for business use.

7. *Employer-like activities*: Uber requires driver applicants to upload their driver's license information, vehicle's registration, and insurance; applicants must pass a background check; Uber encourages drivers to work as much time for Uber and not look for other employment; Uber drivers must agree to Uber's rules and oversight.

These facts raise disputes here such that "reasonable people could differ on whether a worker is an employee or an independent contractor based on the evidence in the case." *Cotter v. Lyft, Inc.*, 60 F. Supp. 3d 1067, 1076 (N.D. Cal. 2015). The Court therefore finds that "the question is not for a court to decide; it must go to the jury," *id.*, and declines to dismiss Uber on summary judgment. [5]

*Conclusion*

This Court finds that genuine issues of material fact exist such that the determination of whether Uber is liable for Ms. Issa's alleged negligence should be resolved by a jury. The Court therefore DENIES Defendants' Motion for Summary Judgment. ECF No. 68. Uber's Motion to Strike/Objections to some exhibits to Balise's Statement of Undisputed Facts is also DENIED. ECF No. 83.

---

[5] For the same reasons that the jury should decide whether there is an employer-employee relationship, it should also decide the issue of apparent authority.

IT IS SO ORDERED.

John J. McConnell, Jr.
Chief Judge
United States District Court

January 16, 2020